UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT HEILMAN**,

Plaintiff,

v.

**RICK COURSEY, EOCI** Supt.**: DOUG HARDER, EOCI** Assist. Supt.**; EOCI** Cpt. **DALH; EOCI CO. BRANSTETTER; EOCI CO. LOWELL**,

Defendants.

Civil Case No. 3:11-CV-00594-KI

OPINION AND ORDER

Robert Heilman
Two Rivers Correctional Institution
82911 Beach Access Rd.
Umatilla, Oregon 97882

Pro Se Plaintiff

John R. Kroger
Attorney General
Michael R. Washington
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

Attorneys for Defendant Rick Coursey, Doug Harder, Bryan Branstetter, and Phillip Dahl

KING, Judge:

Plaintiff Robert Heilman, proceeding *pro se*, brings a civil rights action against several Oregon Department of Corrections ("ODOC") officers regarding his treatment while a prisoner at the Eastern Oregon Correctional Institution ("EOCI") in Pendleton, Oregon. Before the court is defendants' Motion for Summary Judgment [20]. For the following reasons, I deny the motion. Defendants' related Motion to Stay Discovery [23] is denied as moot.

## UNDISPUTED FACTS

Plaintiff was incarcerated at all times material to the allegations in his Complaint at EOCI. He alleges defendants violated his Eighth Amendment rights when they allowed two inmates to enter his cell and assault him to the point of unconsciousness.

Plaintiff's additional allegations and the facts in dispute are referenced below.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

**DISCUSSION**

Plaintiff brings a claim under 42 U.S.C. § 1983 against several prison officials based on alleged Eighth Amendment violations. Plaintiff's theory is that in allowing him to be assaulted, defendants have violated his constitutional right to be free from cruel and unusual punishment.

I. Eleventh Amendment Immunity

I previously dismissed the State of Oregon as a defendant because the Eleventh Amendment bars suit in federal court against a state or an agency acting under its control. Similarly, all claims against defendants acting in their official capacities are also barred by the Eleventh Amendment.

Plaintiff has sued defendants in their individual capacities. The Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the officers' own pockets. Kentucky v. Graham, 473 U.S. 159, 163-70 (1985) (discussing distinction between individual capacity and official capacity suits). Defendants argue that the "sole cause of action for any tort of . . . employees . . . of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." ORS 30.265(1). They suggest that, as a result, the only proper defendant is the State of Oregon or the Oregon Department of Corrections, both of which are protected from suit by the Eleventh Amendment.

The provision to which defendants cite is contained in the Oregon Tort Claims Act, which is not applicable to section 1983 claims. Vineyard v. Soto, Civ. No. 10-1481-AC, 2011 WL 3705001, at *4 (D. Or. July 21, 2011) (citing Rogers v. Saylor, 306 Or. 267, 273, 760 P.2d 232 (1988)). Consequently, section 1983 claims may be brought against individual officers, employees, or agents. Id.; see also Sanok v. Grimes, 306 Or. 259, 262, 760 P.2d 228 (1988); Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996) (state law immunity defenses inapplicable in section 1983 actions). I deny defendants' motion on this ground.

II. Supervisory Involvement

Defendants also argue that plaintiff's claims against the supervisory employees Rick Coursey, Superintendent of EOCI, and Doug Harder,[1] Executive Assistant to the Superintendent, must fail. Liability under section 1983 arises only upon a showing of personal participation by the defendant in the alleged constitutional deprivation. Ortez v. Washington Cnty., 88 F.3d 804, 809 (9th Cir. 1996). There is no *respondeat superior* liability under section 1983. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). Typically, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges only that Rick Coursey is the Superintendent of EOCI and Doug Harder is the Legal Affairs Officer, and that:

> The failure of Defendant Coursey and Harder to act on substantial risk of harm, that was inevitable by allowing placement of sex offenders and gang

---

[1]Defendants admit that in a scrivener's error, they incorrectly referred to "defendants Nooth and Miller" as the supervisory employees in their motion for summary judgment.

> members together, to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safty [sic].
>
> As a result of Defendant Coursey's and Harder's failures, Plaintiff was viciously beaten and received serious physical and emotional injuries.

Compl. 14.

As defendants correctly note, plaintiff does not allege Superintendent Coursey or Harder personally participated in the alleged constitutional deprivation. However, plaintiff may assert a claim against an official for personal liability if the official devised or implemented a facially unconstitutional policy. Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (supervisory liability possible if policy is a "repudiation of constitutional rights" and is "the moving force of the constitutional violation"). Indeed, in his response to the defendants' motion, plaintiff underscores his allegation that Superintendent Coursey and Harder failed to develop policies to protect inmates, or developed and implemented a policy that was deliberately indifferent to his safety.

Defendants have not moved for judgment against the claim plaintiff alleges–that Superintendent Coursey and Harder devised or implemented a policy allowing sex offenders and gang members to be housed together–and I therefore reject defendants' motion for summary judgment on the claims against Superintendent Coursey and Harder.[2]

---

[2] A case, in which defendant Coursey is named, involving a similar allegation is currently pending before the District of Oregon. See Chandler v. Williams, No. CV-08-962-ST, 2010 WL 6004373 (D. Or. Dec. 21, 2010), adopted by 2011 WL 841341 (D. Or. Mar. 7, 2011).

III. Officer Lowell

Defendants argue plaintiff fails to establish that defendant "CO Lowell" exists. Defendants concede plaintiff refers to the defendant as "CO Lowe" in his summons, but argue he still has failed to identify "CO Lowe" and show that he exists.

In response, plaintiff reports that he spoke with Mark Banks, a detective with the Oregon State Police, who informed plaintiff that the officer working the housing unit when plaintiff was attacked was Officer Lowe. Plaintiff misspelled the name in his original complaint, but learned the correct spelling later. Plaintiff provided the correct spelling of the officer's name, and has supplied Detective Banks' report in which the name appears.

Defendants do not respond to plaintiff's assertion and evidence. Because plaintiff has adequately demonstrated that Officer Lowe exists, I deny defendant's motion for summary judgment on this ground.[3]

IV. Eighth Amendment Violation

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). A prisoner may state a section 1983 claim under the Eighth Amendment against prison

---

[3]I note that plaintiff may have difficulty demonstrating Officer Lowe acted with deliberate indifference if Detective Banks' report accurately reflects the facts. Detective Banks indicates Officer Lowe did not normally work in plaintiff's housing unit, did not open the cell door knowing inmates were going to assault plaintiff, did not know any of the inmates on the unit, and if he opened the door it was for the towel exchange. Defendants did not move for summary judgment on this basis, but plaintiff is directed that he must show Officer Lowe knew of and disregarded an excessive risk to plaintiff's safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Detective Banks' report indicates Officer Lowe had no knowledge of any safety risk to plaintiff. See Berg v. Kincheloe, 794 F.2d 457, 460 (1986) (dismissing officers when plaintiff could not show they had "any reason to believe [plaintiff] would be attacked").

authorities who act with deliberate indifference to the threat of serious harm or injury by another prisoner. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). An Eighth Amendment claim must satisfy both an objective and subjective inquiry. Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000).

Defendants do not quibble with the fact that plaintiff meets the objective inquiry; plaintiff's deprivation was sufficiently serious to support a claim as he sustained grievous injuries. They do, however, question whether plaintiff has satisfied the subjective inquiry. In other words, did the defendants "know of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Deliberate indifference for a failure to protect claim "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," but it does require that the official "have more than a mere suspicion that the attack will occur." Berg, 794 F.2d at 459 (citation omitted). Deliberate indifference is evaluated in this context by considering "whether, in allegedly exposing the prisoner to danger, the defendant prison official(s) were guided by considerations of safety to other inmates, whether the official(s) took 'prophylactic or preventive measures' to protect the prisoner, and whether less dangerous alternatives were in fact available." Id. at 462 (citation omitted).

Plaintiff's allegations are specific. He alleges as follows:

- August 4, 2009–plaintiff went to security and told them he was being threatened by gang members. Defendant Captain Dahl told him there was nothing plaintiff could do except go back to the unit or go to the hole. Plaintiff went back to his unit and paid the gang members off.

- August 26, 2009–plaintiff went to his counselor for help, who escorted him to the Assignment Office. Plaintiff identified his extorters to Officer Branstetter, who said he would look into the issue.

- September 18, 2009–plaintiff again sought his counselor's help, who set up an appointment for the following week with Officer Branstetter.

- September 21, 2009–plaintiff sent a kyte requesting a move; Officer Branstetter denied the request concluding plaintiff had "nothing coming." Compl. 8.

- September 23, 2009–plaintiff reported to his counselor how unhappy he was that Officer Branstetter refused to move him.

- October 13, 2009–plaintiff was transported to another institution for dental work; he was very happy there. He returned to EOCI on November 4, 2009.

- November 27, 2009–plaintiff sent a kyte requesting a move. Officer Conner found a safe bunk for plaintiff, but Officer Branstetter refused to move plaintiff saying again that plaintiff had nothing coming.

- December 30, 2009–plaintiff's counselor again escorted plaintiff to the assignment office, where plaintiff again pointed out for Officer Branstetter pictures of his extorters. Officer Branstetter suggested a job to get plaintiff off his housing unit and told plaintiff to give it a week. Plaintiff suggested he did not have a week and informed Officer Branstetter that gang members told him they would "smash him and his property if he did not start paying." Compl. 11. Officer Branstetter did not think plaintiff would be attacked.

- January 23, 2009–plaintiff was beaten and robbed by three gang members in his cell.

Plaintiff's allegations are corroborated by the mental health notes he provides as an attachment to his response to defendants' motion for summary judgment.

- August 26, 2009–plaintiff complained to his counselor about "being threatened to be attacked by STG [Security Threat Group] if he does not pay them," he agreed to talk with security in the Assignment Office after his appointment, and he did "talk[] with Assig. Office after appt." Pl.'s Ex. 3, at 1. The counselor noted "[e]vidence of [symptoms] of anxiety due to STG issues." Id.

- September 18, 2009–plaintiff "reported he's still having STG problems on yard and on his unit," and he agreed to talk with the Assignment Office next week. Id. at 2. Again, the counselor noted anxiety due to safety concerns.

- September 23, 2009–plaintiff "reported no one from security has talked w/ him about his issues yet" and he "refused to talk w/ security after appt. re: his security issues," saying he "will survive." Id. at 3. The counselor noted plaintiff's frustration with security.

- December 29, 2009–plaintiff reported anxiety due to "STG pressure on his unit," plaintiff was scared and "ready to talk w/ security about his STG issues now." Id. at 5. His counselor scheduled an appointment for the following day.

- December 30, 2009–plaintiff said he was willing to meet with the Assignment Office about his safety concerns, and the counselor escorted him back to the office.

In subsequent counseling appointments, on January 11 and 13, 2010, plaintiff denied "being assaulted/harassed on unit." Id. at 6. The next note, from January 25, 2010, describes plaintiff's injuries from the assault.

Defendants contend that plaintiff fails to establish an Eighth Amendment violation because "[d]efendant Harder's interview of ODOC staff members yielded no information that Plaintiff had ever provided anyone with substantive information regarding his being extorted and Plaintiff refused to name any individual inmates from whom he felt threatened." Defs.' Mem. in Supp. of Summ J. 7.

Harder's report from March 11, 2010, which was addressed to plaintiff, summarized Harder's investigation of the assault as follows:

> As a result of my review of all available records and speaking with employees named above [Officer Branstetter, and Lieutenants B. Rabb, K. Hogeland, and B. Powell], there isn't any record of you naming any individuals with whom you felt threatened. The employees listed above, individually and in conversations apart from one another all report that you did not provide[] any substantive information regarding you being extorted and that you refused to name any individual inmates from whom you felt threatened. There were no conflicts or relationships that were reported or recorded in the record. No notations were provided from counselors or security staff regarding any concerns that you may have had regarding your safety. During the March 11th interview, you referred to the 'Native American' with whom you attempted (in your own terms) to 'negotiate a deal to leave you alone.' By your account the 'negotiation' ended in a confrontation wherein you refused to pay more than a bag of coffee and the other inmate demanded two bags. You were later assaulted. Had you chosen to provide information to staff, action may have been taken in time to prevent the assault. You chose to handle the situation on your own.

Washington Decl. Ex. 1, at 1 (emphasis added).

As identified above, plaintiff has submitted evidence of repeated "notations . . . from counselors . . . regarding . . . concerns [plaintiff] . . . had regarding [his] safety," which calls into question Harder's assertion that such notations were not "provided[.]" Id. Additionally, although the defendants argue there is no evidence indicating the defendants knew what plaintiff's counselor knew, the mental health records reflect that plaintiff's counselor scheduled appointments with security in the Assignment Office on at least three occasions and escorted plaintiff to the office the last time. Plaintiff alleges he repeatedly asked to be moved, but that Officer Branstetter declined to act on plaintiff's concerns; Officer Harder's report does not contradict that allegation. Finally, while defendants, and Harder's report, focuses on the fact that plaintiff purportedly did not name any of the individuals who were threatening him, defendants have not explained why names would be necessary in making a determination about prisoner

safety.[4] See, e.g. Farmer, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.").

Plaintiff's evidence–which he presents before any discovery has been conducted–is enough to show the possibility that defendants had "more than a mere suspicion that the attack [would] occur" and defendants have not provided evidence on any of the other factors which would mitigate a finding of deliberate indifference, such as whether they were considering other prisoners' safety, whether they took preventative measures, and whether alternatives were available. Berg, 794 F.2d at 459 (citation omitted),

Defendants make much of the police report prepared by Detective Banks, arguing that it supports their theory that plaintiff refused to give the names of his assailants. It is true that in the first report, labeled "Official Misconduct I," plaintiff refused to name his assailants or give a statement regarding the assault to Detective Banks, who was investigating potential criminal charges. The report is not helpful to defendants since the detective concentrates on the January 23, 2010 incident, and plaintiff's unwillingness at that time to give the names of his attackers to an Oregon State police officer. The report says nothing about the months before when plaintiff repeatedly complained to his counselor and to security about the threats, and when he allegedly specifically pointed out pictures of the prisoners attempting to extort him. In fact, the detective concludes:

---

[4]I emphasize that defendants may very well have a good reason for needing names here in order to evaluate plaintiff's safety concerns, but they have not provided any reason to me.

> Inmate Heilman's complaints about not being moved by Officer Branstetter when Officer Branstetter had information from Inmate Heilman that he was in danger appeared to be more of a Department of Corrections inmate housing issue than a criminal violation of law.

Pl.'s Ex. 2, at 5. Although the detective spoke with Officer Branstetter about the allegations, he did so only by referring to Harder's report, asking whether it was a "fair explanation for why Inmate Heilman was housed where he was at EOCI." He did not undertake an independent review of any records to support or refute Officer Branstetter's conclusion that it was a fair explanation; Detective Banks saw the issue as an "internal administrative issue and not a violation of criminal law." Id.

Furthermore, in a later report, labeled "Assault III," which Detective Banks prepared when plaintiff later called him to press charges against his assailants, plaintiff informed the detective that after the incident he "told staff" who had assaulted him. Pl.'s Ex. 4, at 8. Detective Banks challenged plaintiff on this point, noting that it was documented in the Unusual Incident Report that plaintiff had refused to name his attackers. However, when the detective subsequently asked for a check of the confidential informant records to see if plaintiff had made a statement identifying his attackers, he reported he found "a statement" plaintiff had made to "Lieutenant Tangney at the time of the assault;" Inspector Stewart explained such records were normally filed as confidential informant statements to protect inmates from having their statements discovered. Id. at 9. Although the detective does not indicate whether plaintiff named his assailants in that statement, the implication is that he did.

In sum, plaintiff has demonstrated a triable issue exists as to whether the defendants consciously disregarded a substantial risk of serious harm to plaintiff.

V. Qualified Immunity

Defendants moved for summary judgment dismissing the claims against all defendants arguing they are entitled to qualified immunity. They rest their argument on the first question of the qualified immunity analysis–whether defendants violated plaintiff's constitutional rights. Since I have concluded above that plaintiff raises a genuine issue of material fact to defeat defendants' motion for summary judgment, I deny defendants' motion on this ground.[5]

## CONCLUSION

Defendants' Motion for Summary Judgment [20] is denied. Defendants' related Motion to Stay Discovery [23] is denied as moot. The Court will schedule a telephone conference to set a case schedule.

IT IS SO ORDERED.

Dated this 23rd day of March, 2012.

/s/ Garr M. King
Garr M. King
United States District Judge

[5]Defendants also argue in one sentence that "it would not be clear to any reasonable officer that Defendants' actions were unlawful in this situation," but fail to explain why that is. Accordingly, defendants are not entitled to summary judgment on the basis of qualified immunity.